1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leanna Smith,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Barrow Neurological Institute of St. Joseph's Hospital and Medical Center, et al.,<br><br>　　　　Defendants. | No. CV 10-01632-PHX-FJM<br><br>**ORDER** |

The court has before it defendants Banner Health System and Scott Elton, M.D.'s (collectively, "Banner defendants") motion for summary judgment (doc. 138), statement of facts in support (doc. 139), plaintiff's response (doc. 148), plaintiff's controverting statement of facts (doc. 149), defendants' reply (doc. 168), and defendants' opposition to plaintiff's controverting statement of facts (doc. 169).

**I**

Defendant Banner Health System owns and operates Banner Desert Medical Center, where Dr. Elton practiced as a neurosurgeon. On August 22, 2008, plaintiff's minor daughter C.R. was transferred to Banner Desert for a second opinion of intracranial pressure. On August 27, 2008, Dr. Elton and two other treating physicians reported to Child Protective Services ("CPS") their belief that C.R., a 14-year-old child at the time, was the victim of child abuse or neglect. Dr. Elton and four other physicians sent a letter to CPS on September

1  3 stating that "[r]eturning home to mother's care will impede [C.R.'s] recovery and be further
2  psychologically and medically harmful to [C.R.]"  (Doc. 139, ex. D).  The juvenile court
3  issued a preliminary protective order on September 11, 2008, finding that temporary custody
4  in a foster home was "**clearly necessary** to prevent abuse or neglect pursuant to ARS § 8-
5  825." (Doc. 139, ex. E) (emphasis in original).  Before C.R. was removed from plaintiff's
6  custody, she lived with plaintiff, an older brother, her half-sister J.S., and her stepfather and
7  J.S.'s father, Mr. Smith.  C.R.'s biological father was incarcerated.  After an evidentiary
8  hearing on April 7, 2009, the juvenile court found "by a preponderance of the evidence, that
9  the child is in need of proper and effective parental care and control and, at this time,
10 [plaintiff] is not able to exercise such care and control." (Doc. 139, ex. G).  The court kept
11 C.R. in foster care following hearings July 9 and December 14, 2009.

12       The juvenile court held another evidentiary hearing on May 19, 2010, at which an
13 expert witness testified that "it is not unreasonable to fear for her life if [C.R.] is left
14 unsupervised with her mother." (Doc. 139, ex. J).  This witness also raised concerns about
15 plaintiff's other daughter, J.S., who was four at the time.  Based on these concerns, the court
16 ordered "an investigation of the safety and well-being of the child [J.S.] and an assessment
17 of the risk mother presents to her" including the use of physical discipline. Id.

18       In an order dated May 19, 2010, the court kept C.R. in foster care and changed her
19 case plan from family reunification to long-term foster care.  (Doc. 139, ex. K).  J.S. was
20 placed in foster care in May 2010.  In an order dated June 17, 2010, the court found
21 "probable cause to believe temporary custody of [J.S.] is clearly necessary to prevent abuse
22 pending the hearing on the dependency petition." (Doc. 139, ex. L at 3).

23       The juvenile court held a trial in August and September 2011 on dependency and
24 severance for C.R. and J.S. and issued orders in January 2012.  The court denied the
25 severance petition and dismissed the dependency action as to C.R. because the state had not
26 proven that C.R.'s best interests would be served by termination of parental rights "for a child
27 on the verge of reaching her majority." (Doc. 139, ex. B).  The court went on to note that it
28 heard through hearsay that C.R. wanted her mother's parental rights severed, but she did not

testify and therefore "the evidence was insufficient to establish best interests for a child immediately about to turn 18 years old." Id. The court found that plaintiff and Mr. Smith had neglected and willfully abused J.S. and terminated their parental rights as to her (doc. 139 ex. S).

**II**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P. "[T]he moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the "moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. The evidence presented by the parties must be admissible. Rule 56(e), Fed. R. Civ. P.

Rule 56(d), Fed. R. Civ. P., permits a court to defer considering a motion for summary judgment, deny the motion, or allow time for discovery if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." A good faith showing that a continuance is needed requires the party to show, by affidavit or declaration, the specific facts she hopes to elicit from further discovery, that the facts sought exist, and that these facts are essential to resist the summary judgment motion. Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).

In her controverting statement of facts, plaintiff asks that we stay the motion to allow plaintiff to take depositions. (Doc. 149 ¶ 6). But plaintiff did not submit an affidavit or declaration showing that facts are unavailable to her. She also failed to identify the specific facts she seeks or show that such facts exist. "[A] party cannot successfully oppose a summary judgment motion by simply claiming that further discovery may yield unspecified facts that could plausibly defeat summary judgment." Cramer v. Devon Group, Inc., 774 F.

- 3 -

1   Supp. 176, 180 (S.D.N.Y. 1991). Because plaintiff has not met the standard of Rule 56(d),
2   Fed. R. Civ. P., the court declines to stay consideration of this motion.

### III

4   In denying the Banner defendants' motion to dismiss, Judge Campbell determined that count one alleged intentional interference with custody of a child, not simply mere negligence. (Doc. 58). Assuming without deciding that such a cause of action exists under Arizona law, defendants are immune from liability under A.R.S. § 13-3620(J).

8   Plaintiff contends that the Banner defendants made a maliciously false report to CPS which deprived her of her relationship with her daughter, C.R. In Arizona, physicians have a duty to report suspected child abuse. "Any person who reasonably believes that a minor is or has been the victim of physical injury, abuse, child abuse, a reportable offense or neglect . . . shall immediately report or cause reports to be made of this information to a peace officer or to child protective services[.]" A.R.S. § 13-3620(A). Under this subsection, "person" includes a physician "who develops the reasonable belief in the course of treating a patient." Id. Reasonable belief is a "low standard" in light of the public policy of encouraging people to report child abuse. Ramsey v. Yavapai Family Advocacy Ctr., 225 Ariz. 132, 138, 235 P.3d 285, 291 (Ct. App. 2010).

18  Plaintiff argues that defendants' report to CPS was unreasonable. But reasonable belief for reporting abuse exists "if there are *any* facts from which one could reasonably conclude that a child had been abused." L.A.R. v. Ludwig, 170 Ariz. 24, 27, 821 P.2d 291, 294 (Ct. App. 1991) (emphasis added). "The statute does not contemplate that a person must fully investigate the suspected abuse before making a report." Id. The court in L.A.R. found reasonable grounds for reporting suspected abuse based on a statement from the child's mother. Id. at 26-27, 821 P.2d at 293-94. The counselor did not observe or examine the child prior to reporting but was granted immunity. Id. at 28, 821 P.2d at 295. In this case, Dr. Elton personally treated C.R. and reviewed her extensive medical history, including multiple hospitalizations and problems of unexplained origin. It was not unreasonable for him and other treating physicians to suspect that child abuse might be occurring.

1 Defendants' reasonableness in making the report is supported by the subsequent
2 actions of the juvenile court. Within days of defendants' report, the court found by a
3 preponderance of the evidence that state custody was "**clearly necessary** to prevent abuse
4 or neglect" and C.R. should remain in a foster home. (Doc. 139, ex. E) (emphasis in
5 original). The juvenile court found again and again that it was in the best interests of C.R.
6 to remain in the custody of the state. (See, e.g., doc. 139, ex. K). Plaintiff has failed to
7 present evidence sufficient to create a genuine issue of material fact as to whether defendants
8 reasonably believed C.R. had been abused.

9 Qualified immunity is available to persons who make reports under the mandatory
10 reporting statute. L.A.R., 170 Ariz. at 28, 821 P.2d at 295. "A person who furnishes a
11 report, information or records required or authorized under this section . . . is immune from
12 any civil or criminal liability by reason of that action unless the person acted with malice[.]"
13 A.R.S. § 13-3620(J). Malice is "a wish to vex, annoy or injure another person, or an intent
14 to do a wrongful act, established either by proof or presumption of law." A.R.S. § 1-215(20);
15 Ramsey, 225 Ariz. at 139, 235 P.3d at 292. The court "presume[s] that a person acting
16 pursuant to A.R.S. § 13-3620 acted in good faith and with proper motives." Ramsey, 225
17 Ariz. at 139, 235 P.3d at 292. Plaintiff has the burden to prove malice to defeat qualified
18 immunity. Id.

19 Plaintiff has not overcome the presumption of good faith to show that defendants
20 acted with malice. She contends that defendants' report to CPS suggested that she caused
21 C.R.'s comas and this suggestion was malicious. But it is not reasonable to infer from
22 defendants' statements that they wished to vex or injure plaintiff. The only "facts" supporting
23 her claim of malice are the conclusions of Dr. Newberger:

> The Banner Desert Medical Center reports of [C.R.'s] mother's alleged abuse of her to Arizona's child protection agency contained multiple misrepresentations of [C.R.'s] medical history and clinical status. So numerous were these falsehoods, and so insubstantial the attention to the knowledge base readily available to [C.R's] treating physicians, that they raise serious questions not simply about their honesty, but of their motives. The reports appear to have been made in bad faith.

28 (Doc. 149, ex. DD at 59).

- 5 -

Rule 702, Fed. R. Evid., provides that an expert witness may testify in the form of an opinion if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" There is no need for an expert's knowledge to help a fact finder determine defendants' motivation. Dr. Newberger was plaintiff's "pediatric child abuse expert" at the juvenile court trial.[1] (Doc. 175, ex. C at 2). His expertise is the diagnosis, treatment, and prevention of child abuse and neglect. He cannot help determine defendants' state of mind. In addition, "mere allegation and speculation do not create a factual dispute." Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081 (9th Cir. 1996). Dr. Newberger's opinion about defendants' motives is pure speculation. His opinion would not be admissible at trial and therefore cannot support plaintiff's allegations at this stage. Plaintiff has failed to rebut the presumption that defendants acted in good faith and are immune under A.R.S. § 13-3620. Defendants are entitled to summary judgment on count one of plaintiff's second amended complaint.

## IV

Count two of plaintiff's complaint pleads violation of civil rights under 42 U.S.C. § 1983, specifically violation of the Fourth and Fourteenth Amendments to the United States Constitution. Although defendants move for summary judgment on count two (Motion at 1), they appear to rely only on collateral estoppel (Motion at 2, 10). This we do not understand. While Judge Campbell allowed the federal claim to go forward at the pleading stage, plaintiff has an obligation to produce evidence to support an agreement with state actors or else these merely private defendants are not subject to suit under 42 U.S.C. § 1983. Yet defendants inexplicably fail to put plaintiff to her burden.

Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S. Ct. 1189,

---

[1] The juvenile court found Dr. Newberger "to be an unpersuasive witness in essentially all respects" because he was "clearly and overtly biased" in favor of plaintiff and "lacked credibility" based on his non-responsive answers. (Doc. 139, ex. B at 2).

1194 (1970). "State law governs the application of collateral estoppel or issue preclusion to a state court judgment in a federal civil rights action." Ayers v. City of Richmond, 895 F.2d 1267, 1270 (9th Cir. 1990). For collateral estoppel to apply in Arizona,

> (1) the issue must have been actually litigated in a previous proceeding, (2) the parties must have had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits must have been entered, (4) resolution of the issue must be essential to the decision, and (5) there must be common identity of the parties.

Garcia v. Gen. Motors Corp., 195 Ariz. 510, 514, 990 P.2d 1069, 1073 (Ct. App. 1999). The fifth element is not required when a defendant asserts collateral estoppel. Campbell v. SZL Props., Ltd., 204 Ariz. 221, 223, 62 P.3d 966, 968 (Ct. App. 2003).

The juvenile court issued several final orders finding C.R. dependent. On July 9, 2009, the court found C.R. dependent and stated that foster care was necessary to protect her welfare (doc. 139, ex. H). On December 14, 2009, the court found C.R. continued to be dependent and foster care was necessary (doc. 139, ex. I). On May 19, 2010, the court found plaintiff "failed to prove by a preponderance of the evidence that return of [C.R.] would not create a substantial risk of harm to the child's physical, mental, or emotional health or safety" (doc. 139, ex. K). The court's factual findings included part of an expert's report which stated that C.R. experienced life-threatening events when she was around her mother and it was not unreasonable to fear for her life if she was left unsupervised with plaintiff. On June 17, 2010, the court found "probable cause to believe that temporary custody of [C.R.] is clearly necessary to prevent abuse pending the hearing on the dependency petition." (Doc. 139, ex. L). The issue of abuse or neglect was actually litigated adversely to plaintiff, essential to the court's valid and final decisions on dependency, and plaintiff had a full and fair opportunity and motive to litigate this issue. As a result, plaintiff's abuse of C.R. is an issue that she is precluded from arguing here.

The issue in plaintiff's § 1983 claim is whether defendants, acting under color of state law, violated plaintiff's constitutional rights. Plaintiff's second amended complaint alleges that "the custody of a mother with his (sic) child" is a fundamental right, with which defendants have interfered (doc. 34 at 30).

- 7 -

Plaintiff has not established that her constitutional rights were violated by these defendants. The interest of parents in the care and custody of their children is protected under the due process clause of the Fourteenth Amendment. Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212-13 (1972); Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."). However, it is also true that "neglectful parents may be separated from their children." Stanley, 405 U.S. at 652, 92 S. Ct. at 1213. "No matter how important the right to family integrity, it does not automatically override the sometimes competing 'compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'" Kia P. v. McIntyre, 235 F.3d 749, 758 (2d Cir. 2000); see also Linda V. v. Ariz. Dep't of Economic Sec., 211 Ariz. 76, 78, 117 P.3d 795, 797 (Ct. App. 2005) (a parent's right to care, custody, and control of her children "is not absolute"). As a result of plaintiff's abuse of C.R., her right to care and custody may be limited by the state's compelling interest in children's welfare.

Moreover, plaintiff did not establish that defendants interfered with her custody of C.R. In Pittman v. Cuyahoga County Department of Children & Family Services, 640 F.3d 716 (6th Cir. 2011), the court found that a social worker who allegedly made misrepresentations to the juvenile court during custody proceedings could not be liable for violating the father's due process rights. "Because the juvenile court has the ultimate decisionmaking power with respect to placement and custody, it alone could deprive [father] of his fundamental right." Id. at 729. The same is true here. Actions which interfered with plaintiff's custody of C.R. were taken by the state and authorized by state law. Arizona directs CPS workers to investigate reports of abuse or neglect and take a child into temporary custody. A.R.S. § 8-802(C). The juvenile court has the power to interfere with a parent's custody by terminating the parent-child relationship or transferring custody of the child. See, e.g., A.R.S. § 8-538 (describing necessary contents of orders terminating rights or

1 transferring custody). Defendants, as private parties, did not have authority to initially 2 remove C.R. from plaintiff's custody or continue to keep her in foster care. They did not 3 deprive plaintiff of custody of C.R.

4 Finally, plaintiff has produced no evidence of state action. The moving defendants 5 are private parties, not state actors. There is a "presumption that conduct by private actors 6 is not state action" and plaintiff bears the burden of establishing that defendants were state 7 actors. Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011). 8 Plaintiff has not overcome this presumption against state action. Plaintiff has not produced 9 enough evidence of essential elements of her § 1983 claim to carry her burden at trial against 10 these defendants. Defendants are therefore entitled to summary judgment on count two.

## V

12 Accordingly, **IT IS ORDERED GRANTING** defendants' motion for summary 13 judgment (doc. 138).

14 DATED this 30th day of July, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge